UNITED STATES DISTRICT COURT
for the WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| M.C.S., in her capacity as parent and guardian of minor student, W.B., | Case No.: |
| Plaintiff, | |
| vs. | COMPLAINT AND JURY DEMAND |
| SEATTLE SCHOOL DISTRICT NO. 1, | |
| Defendant. | |

Plaintiffs, by and through their attorneys, allege as follows:

## I.     PRELIMINARY STATEMENT

1.1     This is a disability discrimination case brought by a student with a disability, W.B. (through his parent), against the Seattle School District No. 1 ("Defendant" or "District"). At Stevens Elementary, the conditions for special education students, including W.B., were particularly bad. The special education classroom was woefully understaffed and the staff that were available were not properly trained or supervised. The lack of appropriate staffing resulted in numerous incidents of restraint and isolation of W.B.  The District knew about the substandard conditions at Stevens Elementary and even referred to it as a "burning dumpster fire" internally. W.B. was restrained an isolated so excessively that he was sent home with bruises on multiple occasions. W.B.'s mental health also significantly deteriorated to the point he needed to be hospitalized and told his mother "[he] wanted to die."

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

1.2     Plaintiffs bring this action against Defendant for violations of T.A.'s rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, the Americans with Disabilities Act 42 U.S.C. 12101 et seq., Section 504 of the Rehabilitation Act of 1973, and his right to equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983. The Plaintiffs also bring claims under Washington law, to include violations of the Washington Law Against Discrimination, Negligence, Negligent Hiring, Training, and Supervision, False Imprisonment, Assault and Battery, Outrage, and Loss of Consortium and violations of the Public Records Act.

## II.     JURISDICTION AND VENUE

2.1     This Court has jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. § 1331, including any civil action to redress the deprivation of any right, privilege, or immunity secured by the Constitution, laws, or treaties caused under the color of state law, statute, ordinance, regulation, custom, or usage pursuant to 28 U.S.C. § 1343.

2.2     This case arises under federal laws and this Court therefore has jurisdiction.

2.3     The Court has supplemental jurisdiction over state law claims made here pursuant to 28 U.S.C. § 1367.

2.4     A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred pursuant to 28 U.S.C. § 1391.

2.5     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all of the incidents complained of in this Complaint occurred in the city of Seattle, in King County, Washington.

## III.     PARTIES

3.1     Plaintiff W.B. is currently nine years old and lives in Seattle, in King County, Washington.

3.2     W.B. has been diagnosed with Autism.

3.3     W.B. qualifies as an "individual with a disability" within the meaning of Section

COMPLAINT AND JURY DEMAND - 2

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

504 and Title II of the Americans with Disabilities Act (42 U.S.C. § 12131(2)), in that he has an impairment that substantially limits his ability to perform one or more major life activities and who, with or without a reasonable modification of educational program requirements, meets the essential eligibility requirement for the receipt of special education and other services provided by the District.

3.4    Plaintiff M.C.S. is the mother of W.B. and lives in Seattle, in King County, Washington.

3.5    Defendant Seattle School District is a first-class school district and quasi-municipal entity organized under the laws of Washington located in Seattle, in King County, Washington.

3.6    Pursuant to the Revised Code of Washington Section 28A.320.010, the District is a corporate body that possesses all the usual powers of a public corporation and may sue and be sued and transact all business necessary for maintaining and protecting the rights of the District. The District receives "Federal financial assistance" within the meaning of Section 504 of the Rehabilitation Act of 1973 and its implementing regulations. The District is a "public entity" within the meaning of Title II of the Americans with Disabilities Act because it is a "department, agency, . . . or other instrumentality of a State . . .government." 42 U.S.C. § 12131(1). Consequently, it is subject to suit under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*.

3.7    The District is entrusted with the responsibility for ensuring that the rights and protections under the federal and state Constitutions and laws are afforded to students who are entitled to provision of its programs, services, and procedures. Further, the District is responsible for enforcing, and ensuring that its subordinates, agents, and employees enforce the federal and state laws pertaining to the provision of special education and related services to qualified students.

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

## IV.    FACTUAL ALLEGATIONS

4.1     In agreeing to accept federal funding annually (including without limitation during the years 2018 to present) for use in providing education, including special education programs and services and mental health services, the District is responsible for providing each and every special education qualified student, including W.B., with meaningful access to education and reasonable accommodation, and to ensure that no student is subjected to discrimination because of disability.

### 2018-2019 School Year

4.2     W.B. transferred into the Seattle School District from the Shoreline School District in September of the 2018-2019 academic school year.

4.3     W.B. was placed in the first, second, and third grade Social Emotional Learning (SEL) classroom (also known as classroom 103) at Stevens Elementary located at 1242 18th Ave E, Seattle, Washington, 98112, within the District.

4.4     The SEL classroom had converted closets that were empty and painted blood red. The closet doors were taken off. However, large blue mats were left nearby the closets and were regularly used to cover the closet doorway to keep students with disabilities inside.

**4.5**     At the time, W.B. had an individualized education plan (IEP) that called for him to receive some special education services but to spend 96.52% of his time in the general education setting.

4.6     John Duane was an instructional assistant (IA) assigned to the third, fourth, and fifth grade students in the SEL class. Because W.B. was in the first, second, and third grade SEL class, he should have had very limited contact with Duane.

4.7     Michael Wilcox is also an IA at Stevens Elementary at this time. Wilcox was assigned as the main IA working with W.B. during the 2018-2019 school year. Wilcox was known to the District as being quick to go "hands on" with students meaning he would restrain or grab students even when the student did not pose a risk of harm to themselves or others.

4.8     Michelle Martine was W.B.'s assigned general education teacher during the 2018-

COMPLAINT AND JURY DEMAND - 4

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

2019 school year. Martine was also the building representative for the Seattle Education Association.

4.9     Brian Fitch was the Principal assigned to Stevens Elementary during the 2018-2019 and 2019-2020 school years until February 2020 when he asked for a voluntary demotion.

4.10    Immediately after W.B. began attending Stevens Elementary in September 2018, it was clear his individual education plan (IEP) was not being followed. W.B.'s IEP called for him to spend the majority of his day with his general education peers in Martine's classroom, but this was not happening.

4.11    Instead, W.B. was spending a majority of his time at school in the SEL classroom.

4.12    Martine made it clear to Principal Fitch on several occasions that she was not in favor of the SEL students, including W.B., being integrated into her general education classroom.

4.13    Within the first three weeks of the school year, there were two documented incidents of W.B. being restrained by school staff at Stevens Elementary.

4.14    The District did not initiate a functional behavioral assessment (FBA) to determine the cause of W.B.'s behavior or if restraint was the most appropriate intervention.

4.15    On December 13, 2018, there was another documented incident of restraint of W.B. The reason for the restraint was that W.B. was "throwing pencils." After being restrained, W.B. was escorted to the closet and the doorway was covered with the blue mat by staff. The incident report also states that Duane brought W.B. back to the closet for isolation in the closet with the blue mat later in the day.

4.16    Despite the fact that W.B. had been restrained multiple times throughout the first three months of the school year, the District chose to reduce the number of minutes of social/emotional instruction W.B. was receiving in his IEP in December 2018.

4.17    On February 15, 2019, W.B. was restrained again by the Stevens Elementary special education staff.

4.18    On February 25, 2019, W.B. was isolated in the closet for most of the day by Duane. The incident report was drafted four months after the incident and never shared with

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

M.C.S. The incident report indicates, "Mr. Duane shoved the table toward [W.B.], grabbed him by the arm and had him come sit next to him on the couch. [W.B.] seemed frightened but understood the severity. Mr. Duane talked about all of the potential consequences throughout [W.B.]'s life if he continues with this temper and behavior."

4.19    On May 15, 2019, W.B. was restrained at school by staff members.

4.20    On May 30, 2019, W.B. was restrained at school again by special education staff members. The incident was documented. However, the incident report indicated that W.B.'s behavior intervention plan (BIP) was reviewed. W.B. did not have a BIP and nothing was actually reviewed.

4.21    On June 5, 2019, W.B. was restrained at school again by special education staff. The incident report states that W.B. was restrained because he had what is described as a "sharp crystal" in his pocket. He was restrained for an excessive period of time and there were three sets of staff that cycled through the restraint of W.B including Martine. Two staff then carried W.B. onto a bus that took him home.

4.22    M.C.S. noticed that W.B. had severe bruising on his arms and back that night. She photographed the bruising and sent it to the school staff and asked what had happened to W.B. at school.

4.23    Martine responded to M.C.S. in an email indicating that it was a "crazy day" and that W.B. fell off of some playground equipment. Martine also told the Parent that she "did not put [her] hands on him."

4.24    Principal Fitch also responded to M.C.S.'s inquiry about what happened to her son saying that "It is clear that you don't have a clear understanding of what is happening here at school and our responses."

4.25    While a report was created documenting the incident, the report was not shared with M.C.S.

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

**2019-2020 School Year**

4.26    W.B. was assigned to the first, second, and third grade SEL classroom again in the 2019-2020 school year with Wilcox as his primary IA.

4.27    Rose Valente was W.B.'s primary SEL special education teacher at this time.

4.28    W.B. continued to spend most of his day in the SEL class despite his IEP which called for most of his time to be spent with his general education peers.

4.29    On September 17, 2019, W.B. was restrained at school because he was upset his mom was leaving. W.B. was restrained long enough to allow his mother to leave.

4.30    On September 20, 2019, Valente sent an email to M.C.S. stating that W.B. was doing great in general education, but he was struggling in the SEL classroom. M.C.S. replied to Valente saying that W.B. was saying he was scared of Wilcox and he did not want to ask for help in class.

4.31    On September 20, 2019, Valente witnessed Wilcox grab a first-grade student's arm and pull him by the arm back into the classroom. Valente said that Wilcox closed the door on the student's leg while twisting his arm behind him.

4.32    Valente had witnessed Wilcox grab students by the arms on about 12 occasions over the 2019-2020 school year. She asserted that the physical actions were inappropriate.

4.33    Valente reported these incidents to Principal Fitch, but it seemed to Valente that nothing was ever done to address the behavior.

4.34    Additionally, in September 2019, another special education teacher at Stevens Elementary, Emily Hitchcock, witnessed Wilcox use a large blue mat to physically pin a student to a wall in the break room.

4.35    In September 2019, a Stevens Elementary school counselor, Jen Greenstein, witnessed Duane grab a student by the upper arm and pull him out of the cafeteria back into the closet.

4.36    On October 31, 2019, Valente was trying to calm W.B. in the hallway.

4.37    Duane came into the hallway to help Valente escort W.B. back to his classroom.

COMPLAINT AND JURY DEMAND - 7

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

1   Duane began yelling "Calm down" and "Why are you acting like this?"

2   4.38   Valente and Duane both led W.B. to the elevator with both on each side of W.B.

3   holding his arms.

4   4.39   Valente was performing a hold she had learned in District training while Duane

5   was "grabbing" W.B.'s arm improperly. Duane was dragging W.B. hard by the arm.

6   4.40   When they reached the elevator, Duane pinned W.B. to the corner of the elevator

7   by standing so close to W.B. that he could not move his body.

8   4.41   Valente demanded that Duane let go of W.B. when he had him pinned in the

9   elevator. Duane did not back away from W.B.

10   4.42   Duane grabbed W.B. by the arms and picked him up so his back was against the

11   elevator wall and his feet were off the floor.

12   4.43   Valente continued to ask Duane to stop, but Duane did not stop.

13   4.44   When the elevator reached the correct floor, Duane grabbed the right arm of W.B.

14   and pulled him out of the elevator to go to the classroom. Again, Duane was rough with W.B. and

15   Duane was forcing him to walk by grabbing his arm.

16   4.45   When they reached the classroom, Duane forced W.B. into the closet and pinned

17   W.B. to the corner of the closet with his body.

18   4.46   Valente again asked Duane to back off while he was pinned in the closet.

19   4.47   W.B. was forced to stay in the closet for several minutes.

20   4.48   Valente filled out an incident report and gave a copy to Principal Fitch to enter

21   into the District reporting system.

22   4.49   Valente also reported the incident to the special education administrator, Nicole

23   Fitch, and warned her that she would report the incident to Child Protective Services (CPS) in 24

24   hours if no action was taken.

25   4.50   No action was taken by the District and Valente was so disturbed by the conduct

26   that she reported this incident to CPS on November 1, 2019.

27   4.51   Principal Fitch never entered the incident report into the District's reporting

COMPLAINT AND JURY DEMAND - 8

1    system and the report was not provided to M.C.S.

2         4.52    The same day, Valente emailed photos to Principal Fitch of bruises to another

3    student's arm from earlier in the school year. She noted in her email that the photos show "where

4    IA's are known to grab children by" and added that this is W.B. should only be restrained if he is

5    posing a threat of harm to himself or others. The photos were taken by another parent of a student

6    in Valente's class taken on September 16, 2019.

7         4.53    Principal Fitch took no follow up action in regard to Valente's expressed concerns.

8         4.54    On November 1, 2019, Valente asked W.B. if he felt safe at school, he replied,

9    "No, I'm scared." When asked what he was afraid of W.B. responded "I'm scared of Mr. Wilcox

10   because he always gives me bruises in the 'break room.'"

11        4.55    Valente told M.C.S. about the incident through text message. When M.C.S.

12   requested information from the District about what had happened to her son, the District

13   responded by giving her the contact information to make a public records request. The District

14   did this knowing that there were never any incident reports filed and no information could be

15   obtained through a public records request.

16        4.56    The District assigned an internal investigator, Jason Dahlber, to look into the

17   allegations against Duane and Wilcox. Dahlber states in his report that he did not interview W.B.

18   because the mother did not file a public records request. However, this information was

19   affirmatively untrue as M.C.S. had made a public records request and the District's public records

20   department confirmed with Dahlber that they had logged a request from M.C.S. and intended to

21   produce records of the investigation.

22        4.57    When asked for the records to produce to the parent, Dahlberg replied that he did

23   not have the investigative records as they were "with [his] boss."

24        4.58    Records responsive to M.C.S. public records request were not produced to her in

25   a timely manner.

26        4.59    Dahlber found through his investigation that the staff were using blue mats to

27   isolate students in the closets. Dahlber did not note this as a concern in his report.

COMPLAINT AND JURY DEMAND - 9

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

4.60    In October 2019, the District behavior specialist, Dr. Stephanie King came to Stevens Elementary to speak with the special education staff. Dr. King was told about the use of blue mats and she advised the staff including Principal Fitch that they needed to cease the use of the blue mats.

4.61    After Dr. King left, Principal Fitch told staff that they should continue use of blue mats to keep special education students in the closets.

4.62    Dr. King never followed up to ensure that the use of blue mats had ceased.

4.63    On November 4, 2019, Valente witnessed W.B. elope from the classroom towards the front of the school.

4.64    Valente saw Duane grab W.B. by his upper arm and escorted him back to the first-floor hallway by dragging him by the upper arm.

4.65    Valente saw this and approached Duane and said to "take his arm on the side" referring to the proper hold she had learned in District training, but Duane said, "No, I got this" and he dragged W.B. down the hallway to his classroom by the arm.

4.66    Once in the classroom, Duane pinned W.B. into the corner of the closet while W.B. was screaming.

4.67    There was no incident report written or recorded for the November 4, 2019 incident.

4.68    The staff at Stevens Elementary were openly hostile to Valente for complying with her obligations as a mandatory reporter after reporting the incident with Duane and Wilcox to CPS.

4.69    Valente was moved to a different school because of the significant harassment she was facing from other staff members for reporting abuse of W.B. After Valente was transferred around the time of the Thanksgiving holiday in 2019, the SEL classroom 103 had no special education teacher assigned until March 2020. It appears substitute teachers were not consistently utilized, and the already chaotic classroom was left teacher-less for several months.

4.70    In December 2019, W.B.'s IEP team met and discussed the possibility of maybe

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

1   starting a functional behavior assessment (FBA) as W.B. did not have one. The FBA was not
2   initiated by the District.

3       4.71    The IEP team also discussed the fact that W.B. has not been spending any time in
4   his general education classroom. They documented in W.B.'s IEP that they were hopeful W.B.'s
5   general education time would increase throughout the year.

6       4.72    W.B. did not end up increasing his general education time. In fact, Principal Fitch
7   continued to send quasi threatening emails to M.C.S. stating that he would take away W.B.'s
8   general education time if W.B. continued with non-compliant behaviors at school.

9       4.73    In January 2020 an all-staff meeting was held at Stevens Elementary and the
10  discussion of the reporting of abuse of W.B. came up.

11      4.74    Staff openly discussed that-- because Mr. Duane is Black as were other
12  paraeducators at Stevens disproportionally assigned to students of color with externalizing
13  behaviors -- that complying with mandatory reporting obligations was racist and that staff should
14  report instances of mandatory reporting to the Seattle Education Association Center for Racial
15  Equity. Principal Fitch was at this meeting and took no action to clarify staff roles and
16  responsibilities in regard to reporting abuse at school.

17      4.75    On January 17, 2020, Martine sent out an all-staff email focused on the topic of
18  reporting child abuse at school with the subject line, "your amazing."

19      4.76    The email went on to state,
20          We are in a place where we can't trust each other – how sad. If
            you see something that is surprising enough to you that you want
21          to report someone else – please have the kindness, decency and
            professionalism to talk to them first – we really do not know the
22          context of every situation we see. This has caused major
            disruptions in our community the past months and it is still
23          happening. Communicate with each other and please let each
            other know if you are filling [*sic*] against each other – or let our
24          admin know – if he says wait I got this please wait for him to
            investigate. And we all know from this experience – we don't
25          tell parents everything that is or is not happening at school –
            maybe they ask but please don't make it a point to discuss
26          students or (I cannot believe I am having to say this) – other
27

COMPLAINT AND JURY DEMAND - 11

teachers/staff actions to parents. . . . Smiles to you – Forest has
a quote he uses – ask me about it – Smiles, Martine

4.77    In January 2020, Duane was issued a Letter of Counseling and he was permitted to return to Stevens Elementary. Duane was in direct contact with W.B. and continued to interact with him. Immediately upon return, Duane approached W.B. and threatened him by saying, "tell the other students what happens if you run in school."

4.78    This interaction happened in front of Principal Fitch, who did nothing.

4.79    Duane's presence was interfering with W.B.'s education as W.B. was terrified of Duane.

4.80    On January 21, 2020, W.B. had an anxiety attack so intense that he required hospitalization.

4.81    During this panic attack W.B. appeared to be in an extreme state of distress and was trembling. When M.C.S. asked W.B. what was wrong, he stated about school, "I can't do it mommy. I want to die. I need to die. I need to kill myself; I can't live anymore. I can't. I can't." W.B. was kept at the hospital for two to three hours and kept trying to hurt himself while he was there.

4.82    M.C.S. wrote to Principal Fitch letting him know that W.B. was extremely upset about school to the point of being suicidal. Principal Fitch responded to M.C.S. that it was W.B.'s own fault that he was repeatedly violently restrained at school by Duane because he "was just ignoring adult directions and running."

4.83    On February 4, 2020, there was an incident with W.B. on the bus where a school security officer, Dave Raybern, was called in by the Stevens staff to restrain W.B. Raybern restrained W.B. by tightly holding his arms behind his back.[1] No incident report was filed and M.C.S. was not notified.

4.84    In February 2020, the M.C.S. was continuing to ask for information about what

---

[1] Dave Raybern was subsequently fired for an incident in March 2020 when he restrained another female student at Stevens by holding her on the ground with his knee to her back while she screamed, "I can't breathe, I can't breathe!"

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

had happened to W.B. at school regarding previous incidents of restraint and wanted to know the outcome of the District's investigation. The District ordered Principal Fitch to communicate with the Parent about the District's findings, which he did not do believing that was the responsibility of human resources.

4.85    In February 2020, Principal Fitch requested a demotion and was transferred to another elementary school within the District. He was quickly replaced by John Hughes, the summer programs coordinator. Hughes only had six months of experience as a principal, and he was told by the District that his appointment at Stevens was happening because he was "picked out of a hat." Hughes was given no information by the District about the problems at Stevens before his arrival.

4.86    On March 2 or March 4, 2020, W.B. was restrained by Wilcox. W.B. was restrained with his arms crossed tightly behind his back and then dragged in that position back to the classroom.

4.87    During the 2018-2019 and 2019-2020 school years, M.C.S. noticed that W.B.'s mental health significantly declined. At first, W.B. seemed to have very low energy and he was tired all the time. Then he stopped communicating with his mother about what was happening to him at school and developed significant anxiety and suicidal ideations.

4.88    No incident report was filed for this and the District only learned of the improper hold because another student witnessed the incident and reported it to her parent.

4.89    A Citizens Complaint was filed with the Office of the Superintendent of Public Instruction (OSPI) by the Stevens school counselor, Jen Greenstein. The Citizens Complaint was given Special Education Citizen Complaint No. 21-001.

4.90    OSPI investigated and a report was issued. The report found a number of concerns regarding the two SEL classrooms at Stevens Elementary including, 1) children were excessively restrained about eight times per day between the two SEL classrooms; 2) the SEL classrooms were chronically understaffed and chaotic; 3) the District admitted to the use of blue mats to hold children in closets; 4) the District admitted it was not adhering to the State reporting requirements

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

1    for instances of restraint and isolation; and 5) the District was not tracking IEPs.

2    4.91    OSPI found several violations against the District and stated, "It is also likely

3    restraint and isolation were overused at the school, although the documentation indicated the

4    school was actively working to change its practices."

5    4.92    W.B. has continued to suffer the emotional fallout from his time in the SEL

6    classroom. He requires ongoing therapy to cope with the trauma from this experience.

7    4.93    Duane, Wilcox, and Martine continue to be employed by the District and continue

8    to be assigned to Stevens Elementary.

9    4.94    Notably, W.B. has since left the Seattle School District and attends third grade in

10   Renton, where he has had zero restraints or hands-on discipline since returning to in-person

11   instruction on March 24, 2021.

12                                  **V. CAUSES OF ACTION**

13   **A.  Americans with Disabilities Act: Disability-Based Discrimination**

14   5.1    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this

15   Complaint as though set forth in full.

16   5.2    With respect to the District's academic and other programs, W.B. is a qualified

17   individual with a disability within the meaning of the Americans with Disabilities Act, in that he

18   has a physical or mental impairment that substantially limits their ability to perform one or more

19   major life activities and who, with or without a reasonable modification of the District's general

20   education program, meets the essential eligibility requirements for the receipt of educational and

21   other services provided by the School District. 42 U.S.C. §§ 12102 and 12131(2). The Seattle

22   School District is a public entity within the meaning of Title II of the ADA. 42 U.S.C. §

23   1213(1)(B).

24

25   5.3    The District enjoys no absolute, qualified, Eleventh Amendment or other

26   immunity with respect to the Plaintiff's claims under the ADA.

27

COMPLAINT AND JURY DEMAND - 14

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

5.4     The District failed W.B. by a) knowingly placing him in an inappropriate classroom for his disability-related needs; b) failed to provide him with adequate disability-related supports in the classroom; c) placing him in a classroom with multiple staff members known to assault W.B. and another student with disabilities; and d) allowing staff members to excessively restrain and isolate W.B. As such, District violated the non-discrimination mandate set forth in the ADA and its implementing regulations. 42 U.S.C. § 12132; 28 C.F.R. §§ 35.1010 et seq. 56.

5.5     Providing W.B. the academic and related modifications to which he was entitled would not have constituted an undue burden or hardship for the District.

**B.   Section 504 the Rehabilitation Act of 1973 (29 U.S.C. § 794) (Section 504): Disability-Based Discrimination**

5.6     Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

5.7     With respect to District's academic and other programs, W.B. is a qualified individual with a disability within the meaning of Section 504 in that he has a physical or mental impairment that substantially limits his ability to perform one or more major life activities and they meet the essential eligibility requirements for the receipt of educational and other services provided by the District. 29 U.S.C. § 705(20); 34 C.F.R. § 104.3(j).

5.8     Section 504 bars all federally funded entities (governmental or otherwise) from discriminating on the basis of disability.

5.9     Defendant receives federal financial assistance and is covered by Section 504.

5.10    The District enjoys no absolute, qualified, Eleventh Amendment or other immunity with respect to the Plaintiff's claims under Section 504.

5.11    By failing to provide W.B. the academic and related modifications (or reasonable accommodation) to which he was entitled, the District violated the non-discrimination mandate

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

set forth in Section 504. 29 U.S.C. § 794; 34 C.F.R. §§ 104.1 et seq.; 34 C.F.R. §§ 104.41-104.47.

5.12    Providing W.B. the academic and related modifications to which he was entitled would not have constituted an undue burden or hardship for the District.

5.13    The District knowingly, deliberately and wrongfully discriminated against W.B. in violation of Section 504 by failing to provide him with an education in the regular educational environment with the use of supplementary aids and services, and by segregating him for several years from peers who reflected their experience, intelligence, and potential.

5.14    During the period 2018 through 2020, the District knowingly, deliberately and repeatedly failed to provide W.B. with an educational program and related aids and services that were designed to meet his individual education needs as adequately as the needs of non-disabled students of the District in violation of Section 504; 34 C.F.R. §§ 104.4 and 104.3, each of which authoritatively construe the statute.

5.15    During the period 2018 through 2020, the District knowingly, deliberately and repeatedly failed to determine the educational and related services necessary to appropriately meet W.B.'s individual needs, including any good faith exploration of possible accommodations needed to provide them with meaningful access to public education.

5.16    During the period 2018 through 2020, the District knowingly, deliberately and repeatedly failed to assure that the programs and services provided to W.B. resulted in significant learning and conferred a meaningful benefit.

5.17    During the period of 2018 through 2020, the reasonable accommodations necessary to provide W.B. with meaningful access to education were available to the District but were never offered or provided.

5.18    During the period of 2018 through 2020, the District wrongfully and deliberately

COMPLAINT AND JURY DEMAND - 16

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

excluded W.B. from and denied him access to related services through the District, including, behavioral therapy, social skills training, parental training, and psychological therapy.

5.19    During the period of 2018 through 2020, the District deliberately interfered with parental participation in W.B.'s educational programming by withholding information regarding abuse and investigations from M.C.S.

5.20    Numerous District administrators, officials, and employees had the authority and the responsibility to rectify the District's failures, as set forth above, but wrongfully failed to take appropriate corrective actions.

5.21    At all relevant times, the Defendants, collectively, had knowledge it was substantially likely that their acts and failures to act, as set forth in the preceding paragraphs of this Complaint, would harm W.B.'s federally protected rights to be free from discrimination, and to have meaningful access to education and reasonable accommodation with respect to his educational disability. Despite this knowledge, the Defendant failed to act upon that likelihood, thereby causing severe and permanent injury to W.B.

5.22    The District's deliberate indifference to W.B.'s federally protected rights, as set forth above, resulted in discrimination against W.B. and denied him reasonable accommodation for his educational disability and meaningful access to public education in Washington, thereby entitling Plaintiff to recover special and general damages from the District under Section 504 in an amount to be shown at trial.

5.23    The District's deliberate indifference in violating W.B.'s rights under Section 504 was a substantial factor in causing W.B. to suffer irreversible personal injury and harm, including profound and irreparable injury to his behavior and social functioning.

5.24    Providing W.B. the academic and related modifications to which he was entitled

COMPLAINT AND JURY DEMAND - 17

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

would not have constituted an undue burden or hardship for the District.

**C. 42 U.S.C. § 1983 – Fourth and Fourteenth Amendment: Unlawful Seizure**

5.25    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

5.26    The Federal Civil Rights Act (42 U.S.C. § 1983) authorizes an individual to bring suit against any "person" who, acting under color of law, deprives the individual of his federal constitutional or statutory rights.

5.27    At all material times, Defendants were acting under color of law.

5.28    By isolating W.B. in closets repeatedly throughout the 2018-2019 and 2019-2020 school years, with a staff member blocking the exit, prohibiting him from coming out volitionally, Defendants violated W.B.'s Fourth and Fourteenth Amendment rights to be free from an unreasonable seizure.

5.29    The District's practice of forcing students with disabilities in the closets was part of a longstanding practice or custom which constitutes the standard operating procedure of the District.

5.30    The District allowed staff to continue this custom and practice of isolating students in the closets with the blue mats against their will.

5.31    The Defendant's conduct was the result of deliberate choice.

5.32    The Defendant's conduct was ratified by the District and its Superintendent.

5.33    W.B. was injured by the unconstitutional policies, customs and procedures implemented and followed by Defendant in violation of the civil rights of students as provided by the 4th Amendment and Section 1 of the 14th Amendments to the Constitution of the United States and Defendant is liable therefore under 42 U.S.C. §§ 1983 and 1988.

COMPLAINT AND JURY DEMAND - 18

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

5.34    By engaging in the acts described herein, Defendant, acting under color of law and with deliberate indifference, violated the Plaintiffs' rights under the U.S. Constitution to be free from unreasonable seizures and excessive force.

**D. Washington Law Against Discrimination (WLAD): Disability and Racial Discrimination**

5.35    Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as though set forth in full.

5.36    W.B. is a student with a disability within the meaning of the Washington State Law Against Discrimination (WLAD), of the Washington State Law Against Discrimination (WLAD), Revised Code of Washington 49.60.010 *et.seq.*

5.37    The District operates a place of public accommodation, as defined by Revised Code of Washington Section 49.60.040.

5.38    The District's response to the discriminatory educational environment was neither reasonably prompt nor adequate and constituted an unfair practice under the WLAD.

5.39    Defendant violated W.B.'s right to be free from discrimination based on disability by acting with deliberate indifference to reports of W.B.'s harassment and assaults. Defendant's deliberate indifference included, without limitation:

a) Refusing to take meaningful action to address reports of numerous physical assaults against W.B., a student with a disability;

b) Creating a hostile educational climate that tolerates disability discrimination, including bodily harm of the same to W.B.;

c) Failing to appropriately discipline staff who subjected W.B. to disability discrimination;

d) Failing to take meaningful action to correct the conditions causing the disability

COMPLAINT AND JURY DEMAND - 19

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

discrimination and to prevent its recurrence; and

e) Failing to provide adequate training for its administrators and employees to prevent and address disability discrimination.

5.40    The District's failure or refusal to provide equal education opportunities to W.B., as a student with a disability, constitutes an unfair and discriminatory practice under WLAD.

5.41    The District violated WLAD by denying W.B. equal educational opportunity and access to its programs and services.

5.42    As a direct and proximate result of these violations of W.B.'s clearly established rights, W.B. has suffered and will likely continue to suffer injuries and losses as well as general and special damages in an amount to be proven at trial.

5.43    Plaintiff is entitled to reasonable attorney's fees pursuant to WLAD.

**E. Washington Common Law: Negligent Hiring, Training and Supervision**

5.44    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

5.45    The District and its Board of Trustees had non-delegable common law duties to exercise reasonable care in the selection, training, supervision and/or retention of the individual persons they employed as administrators and educators to educate, serve and protect students.

5.46    Defendant breached its non-delegable common law duties to exercise reasonable care in the selection, training, supervision and/or retention of special education staff, administrators, investigators, and other persons they employed to educate, serve and protect students. Specifically, the District failed to

a)      Ensure all staff in the SEL classroom were appropriately trained on the District's policies and procedures regarding restraint and isolation;

COMPLAINT AND JURY DEMAND - 20

b)      Ensure all staff in the SEL classroom were trained on how to enter instances of restraint and isolation into the District's reporting system;

c)      Ensure staff in the SEL classroom were complying with the requirement to report instances of restraint and isolation;

d)      Conduct thorough investigations of staff members accused of abusing W.B.;

e)      Provide appropriate training to staff members that were have found to have acted inappropriately with W.B.;

f)      Provide appropriate training to staff in the SEL classroom regarding disability discrimination;

g)      Provide appropriate training to staff on drafting and implementing special education records;

h)      Ensure special education records for W.B. were appropriately maintained and compliant with State and Federal requirements;

i)      Ensure that the SEL classroom had sufficient staff members to keep children safe;

j)      Ensure that staff members in the SEL classroom had the necessary experience and qualifications;

k)      Ensure that the SEL classroom had a certificated teacher assigned; and

l)      Ensure that the principal overseeing the SEL staff had appropriate training on managing students with disabilities and restraint and isolation policies.

5.47    Defendant failed to exercise reasonable care to protect third parties from the foreseeable wrongful acts of its employees.

COMPLAINT AND JURY DEMAND - 21

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

5.48    Defendant failed to control their employees so as to prevent intentional harm or an unreasonable risk of harm to others like W.B.

5.49    As a direct and proximate result of Defendant's failures, W.B.  has suffered and will likely continue to suffer injuries and losses as well as general and special damages in an amount to be proven at trial.

**F. Washington Common Law: Negligence**

5.50    Plaintiffs re-allege and incorporate herein the preceding paragraphs of this Complaint as though set forth in full.

5.51    Defendant stood *in loco parentis* to W.B. from the time he entered the Seattle School District forward.

5.52    The District and its Board of Trustees are vicariously liable for the negligent acts and/or omissions by its employees against W.B.

5.53    Defendants breached its duty to exercise reasonable care to educate, socialize, assist, protect and serve W.B.

5.54    Additionally, Defendant has a duty to exercise reasonable care to avoid from harming all foreseeable plaintiffs. Defendant has a duty to exercise reasonable care in the hiring, training, and supervision of their employees and agents. Defendant has a duty to use reasonable care in administering discipline to students, with whom they have a special relationship.

5.55    Defendant's acts of hiring, retraining, failing to supervise, or failing to train staff at Stevens Elementary and security guards was unreasonable and breached the standard of care.

5.56    As a direct and proximate result of Defendant's breach of duties and resulting negligence, W.B. suffered and will likely continue to suffer injuries and losses as well as general and special damages in an amount to be proven at trial.

COMPLAINT AND JURY DEMAND - 22

**G. Washington Common Law: False Imprisonment**

5.57     Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as though set forth in full.

5.58     The District intended to confine W.B. within a limited area through physical force when staff restrained him and isolating him when W.B. was not posing an immediate threat of harm to himself or others when they kept him confined in a closet and restrained him multiple times over the 2018-2019 and 2019-2020 school years.

5.59     All individual staff members were acting within the course and scope of their employment with the District at the time of the above-described acts and omissions, and in furtherance of the District's business.

5.60     To the extent that the Defendant argues that their actions were justified, Plaintiffs assert that Defendant's actions were unreasonable and outside the scope of Wash. Rev. Code § 28A.600.485.

5.61     The District's affirmative conduct caused a confinement of W.B.

5.62     W.B. was aware that he was confined and suffered bodily harm as a result of his confinement

5.63     W.B. did not consent to the confinement

5.64     As a direct and proximate result of these violations, Plaintiffs suffered damages.

**H. Washington Common Law: Assault and Battery**

5.65     Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as though set forth in full.

5.66     On June 5, 2019; October 31, 2019; November 4, 2019; and March 2 or 4, 2019; Defendant, through its employees, intended to cause fear and apprehension of an imminent

COMPLAINT AND JURY DEMAND - 23

harmful or offensive contact and committed acts that resulted in W.B.'s fear or apprehension of such contact.

5.67    Defendant through its employees intended to touch W.B. in a harmful or offensive manner and committed acts that resulted in harmful or offensive contact with W.B.

5.68    To the extent Defendant argues the force used on W.B. was reasonable and necessary—that no reasonably effective alternative existed—Plaintiffs assert that Defendant's force was excessive, unnecessarily violent, and unreasonable.

5.69    W.B. did not consent to the contact.

5.70    As a direct and proximate result of these violations, W.B. suffered damages.

5.71    The individual staff employed by the District were acting within the course and scope of their employment with the District at the time of the above-described acts and omissions, and in furtherance of the District's business. Defendant is vicariously liable for the negligence of the individual staff members under *respondeat superior*.

5.72    The contact with W.B. on these occasions would offend a reasonable sense of personal dignity.

**I. Washington Common Law: Outrage**

5.73    Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as though set forth in full.

5.74    W.B. was a vulnerable elementary aged child at the time he was assaulted by his special education staff and repeatedly and excessively restrained and isolated.

5.75    Defendant's acts and omissions were so outrageous as to shock the conscience of a reasonable person in society. Defendant's actions were so unreasonable, cruel, and unusual as to amount to actionable outrage. These acts proximately caused W.B. to suffer significant physical

COMPLAINT AND JURY DEMAND - 24

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

harm, mental, emotional, and cognitive distress, as well as special damages.

**J. Washington Common Law: Negligent Infliction of Emotional Distress**

5.76    Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as though set forth in full.

5.77    Defendant negligently inflicted emotional distress on W.B. by creating a severely distressing educational environment beyond what a reasonable person would be expected to endure.

5.78    On information and belief, the Plaintiffs' mental anguish and emotional distress would not have occurred, had the Defendant and its employees exercised the proper standard of care.

**K. Wash. Rev. Code § 4.24.010: Loss of Consortium**

5.79    Plaintiffs Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as through set forth in full.

5.80    Plaintiff M.C.S. is the natural parent of W.B. and has supported him since birth.

5.81    As a direct and proximate result of the Defendant's tortious conduct, M.C.S. has suffered a loss of consortium with her son, resulting in general and special damages in an amount to be proven at trial.

**L. Violation of the Washington Public Records Act**

5.82    Plaintiffs Plaintiffs re-allege and incorporate herein the the preceding paragraphs of this Complaint as though set forth in full.

5.83    Under the Public Records Act (PRA), government agencies are obligated to make available for public inspection and copying all public records, subject to certain exceptions and requirements. *Wash. Rev. Code 42.56, et seq.*

COMPLAINT AND JURY DEMAND - 25

5.84    State law provides that the PRA "shall be liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected." *Wash. Rev. Code* 42.56.030. The PRA also provides that "[c]ourts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." *Wash. Rev. Code* 42.56.550(3)

5.85    Incident reports, communications, and investigation reports are a "public record" as defined by *Wash. Rev. Code* 42.56.010(2).

5.86    The District is an "agency" within the meaning of *Wash. Rev. Code* 42.56.010(1).

5.87    By denying or ignoring M.C.S. request to copy or inspect information related to the restraint and isolation of W.B., the District violated the requirement of the PRA that every "agency . . . shall make available for public inspection and copying all public records." *Wash. Rev. Code* 42.56.070(1).

5.88    Disclosure is in the public interest.

5.89    The District did not provide a denial letter with a brief explanation for how or if an exemption to the records applied.

5.90    Defendant's conduct is in violation of the PRA, including but not limited to:

      a)      Denial of access to public records without justification or exemption;

      b)      Intolerably delay;

      c)      Failure to conduct and investigation to identify responsive records; and

      d)      Lack of explanation as to why these records were withheld from M.C.S.

5.91    Defendant has no valid excuse for failing to comply with the PRA

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

5.92    Defendant is believed to be delaying production under the PRA in order interfere in M.C.S.'s educational planning and programming for her son.

5.93    Defendant has acted in bad faith or with gross negligence.

## V.    PRAYER FOR RELIEF

6.1    Plaintiffs request the following relief as follows:

6.2    For general and special damages to Plaintiffs for harm suffered, permanent injuries, opportunities denied, and deprivation of rights in an amount to be proven at trial;

6.3    Plaintiffs seeks general damages for extreme mental suffering and emotional distress, as well as special damages, in an amount to be proven at trial, all of which were directly and proximately caused by Defendant's acts and omissions.

6.4    An award of Plaintiff's expenses, costs, and reasonable attorneys' fees under 42 U.S. C. §1988 and any other applicable provision of federal or state law;

6.5    As provided in *Wash. Rev. Code* 42.56.550(4), an award of penalties against the District from $5 to $100 per day for each day that the District denied M.C.S. an opportunity to inspect or copy any non-exempt information in the public record.

6.6    An award of punitive damages under applicable provisions of federal law.

6.7    Plaintiffs pray for such other equitable or legal relief as the Court deems just.

## VII. RESERVATION OF RIGHTS

7.1    Plaintiffs reserve the right to assert additional claims as may be appropriate following further investigation and discovery.

**Cedar Law PLLC**
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101

# VIII. JURY DEMAND

8.1     Under the Federal Rules of Civil Procedure, Plaintiffs demand that this action be tried before a jury.

Dated this 9th day of May, 2021.

*s/Shannon McMinimee*
_____
Shannon M. McMinimee, WSBA No. 34471
Cedar Law PLLC
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101
Shannon@cedarlawpllc.com

*s/Lara Hruska*
_____
Lara Hruska, WSBA No. 46531
Cedar Law PLLC
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101
Lara@cedarlawpllc.com

*s/Whitney Hill*
_____
Whitney Hill, WSBA No. 53715
Cedar Law PLLC
13 Cherry Street PMB 96563
Seattle, WA 98104-2205
Tel 206.607.8277
Fax 206.237.9101
Whitney@cedarlawpllc.com

COMPLAINT AND JURY DEMAND - 28